**CASE NO. 15-11928-D**

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

JOHN L. SIMONS,
*Petitioner/Appellant,*

v.

UNITED STATES OF AMERICA,
*Respondent/Appellee.*

---

On Appeal from the United States District Court
for the Northern District of Alabama, Northeastern Division
No. 5:11-CV-8027-CLS-TMP and 5:11-CV-8028-CLS-TMP

---

## BRIEF OF PETITIONER

---

Derek Drennan
Attorney for Petitioner/Appellant
Kirk Drennan Law
500 Office Park Drive
Suite 100
Birmingham, AL  35223
Telephone: (205) 803-3500
Facsimile: (205) 803-1101
e-mail: derek@kirkdrennanlaw.com

CASE NO. 15-11928-D

*United States of America v. John Simons*

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

John L. Simons, through the undersigned counsel, certifies that the following persons may have an interest in the outcome of this case:

1. Putnam, Michael T., United States Magistrate Judge, Northern District of Alabama;

2. Drennan, J. Derek, Counsel for Appellant and Trial counsel;

3. Simons, John L. – Petitioner/Appellant;

4. Smith, C. Lynwood, United States District Judge, Northern District of Alabama;

5. Burrell, Mary Stuart, Assistant United States Attorney for the Northern District of Alabama, representing the United States in these proceedings;

6. Vance, Joyce White, United States Attorney for the Northern District of Alabama, representing the United States in these proceedings.

7. Billingsley, Michael, United States Attorney for the Northern District of Alabama, representing the United States in these proceedings.

RESPECTFULLY SUBMITTED,

*s/ Derek Drennan*
DEREK DRENNAN
*Attorney for John Simons*

i

## STATEMENT REGARDING ORAL ARGUMENT

John Simons leaves it to the discretion of this Court as to whether oral argument would be helpful to the Court and the parties.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT........................................................................ i

STATEMENT REGARDING ORAL ARGUMENT ..................................... ii

TABLE OF CONTENTS.................................................................iii

TABLE OF CITATIONS ............................................................. iiv

TABLE OF RECORD REFERENCES IN THE BRIEF ............................ vvi

STATEMENT OF JURISDICTION.................................................1

STATEMENT OF THE ISSUE................................................... 1

STATEMENT OF THE CASE...................................................1

STATEMENT OF FACTS........................................................ 3

STANDARD OF REVIEW......................................................5

SUMMARY OF THE ARGUMENT............................................ 5

ARGUMENT..................................................................... 7

CONCLUSION................................................................ 23

CERTIFICATE OF COMPLIANCE ......................................... 23

CERTIFICATE OF SERVICE.................................................24

# TABLE OF CITATIONS

**Federal Cases**

*Cauchon v. United States*, 824 F.2d 908 (11th Cir. 1987)...................15

*Davidson v. United States*, 138 Fed. Appx. 238 (11th Cir. 2005)........20, 21

*Hinton v. Alabama*, 134 S. Ct. 1081 (2014).....................................12

*Hill v. Lockhart*, 474 U.S. 52 (1985).......................................21, 22

*Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989)...................22

*Kimmelman v. Morrison*, 477 U.S. 365 (1986)...........................10, 14

*Marquand v. Sec'y, Dep't of Corr.*, 429 F.3d 1278 (11th Cir. 2005).........8

*Payne v. Allen*, 539 F.3d 1297 (11th Cir. 2008)..............................8

*Sgro v. United States*, 287 U.S. 206 (1932).....................................15

*Strickland v. Washington*, 466 U.S. 668 (1984)...........................8, 12

*United States v. Bender,* 290 F.3d 1279, 1284 (11th Cir. 2002)..............5

*United States v. Cronic*, 466 U.S. 648 (1984).........................12, 14, 21

*United States v. Harris*, 20 F.3d 445 (11th Cir. 1994).......................15

*United States v. Kapordelis,* 569 F.3d 1291 (11th Cir.2009).................16

*United States v. Robinson*, 336 F.3d 1293 (11th Cir. 2003)..............18, 19

*United States v. Vanbrackle*, 397 Fed. Appx. 557 (11th Cir. 2010)..........17

## Constitutional Provisions

Amendment VI to the United States Constitution.............…...............6, 8

## Federal Statutes

18 U.S.C. § 1470.….....................................................................1

18 U.S.C. § 2423.…...................................................................1, 5

18 U.S.C. § 2251.….....................................................................1

18 U.S.C. § 2252A.…..................................................................1

28 U.S.C. § 2253(c)(1).….............................................................1

28 U.S.C. § 2255.…………………….....................................1, 7

# TABLE OF RECORD REFERENCES IN THE BRIEF

| Brief page # | | Docket # |
|---|---|---|
| | District Court Docket Sheet 5:11-CV-8027 | A |
| | District Court Docket Sheet 5:11-CV-8028 | B |

Docket References 5:11-CV-8027

| Brief page # | | Docket # |
|---|---|---|
| 1, 2 | Pro Se 2255 Petition | 1A |
| 2 | Brief in Support of Petition | 2A |
| 5 | Government's Response to Petition | 5A |
| 2 | Order Setting Hearing; Appointing Counsel | 8A |
| 2, 3, 4, 5, 6, 7, 12, 13, 14, 15, 16 | Motion for Evidentiary Hearing | 12A |
| 2, 6, 19 | Order Limiting Evidentiary Hearing | 14A |
| 1, 6, 9, 10, 11, 13, 19, 20 | Report and Recommendation | 17A |
| 2 | Objections to R&R | 18A |
| 2 | Memorandum Opinion | 20A |
| 2, 6 | Application for Certificate of Appealability | 22A |

| | | |
|---|---|---|
| 2 | Notice of Appeal | 23A |
| 5 | Hearing Transcript | 29A |
| 2 | Order Denying COA; Dismissing Petition | 30A |
| 3, 4, 6, 7, 12, 14, 15, 16, 18, 19 | Search Warrant (SEALED) | 33A |

Docket References 5:11-CV-8028

| | | |
|---|---|---|
| 1, 2 | Pro Se 2255 Petition | 1B |
| 2 | Brief in Support of Petition | 2B |
| 5 | Government's Response to Petition | 8B |
| 2 | Order Setting Hearing; Appointing Counsel | 17B |
| 2, 3, 4, 5, 6, 7, 12, 13, 14, 15, 16 | Motion for Evidentiary Hearing | 21B |
| 2, 6, 19 | Order Limiting Evidentiary Hearing | 23B |
| 1, 6, 9, 10, 11, 13, 19, 20 | Report and Recommendation | 26B |
| 2 | Objections to R&R | 27B |
| 2 | Memorandum Opinion | 29B |

| 2, 6 | Application for Certificate of Appealability | 31B |
| 2 | Notice of Appeal | 32B |
| 5 | Hearing Transcript | 38B |
| 2 | Order Denying COA; Dismissing Petition | 39B |
| 3, 4, 6, 7, 12, 14, 15, 16, 18, 19 | Search Warrant (SEALED) | 42B |

## STATEMENT OF JURISDICTION

On February 11, 2016, this Court entered an Order granting to the Petitioner

a Certificate of Appealability in this matter.  Therefore, pursuant to 28 U.S.C. §

2253(c)(1), this Court has jurisdiction over the Petitioner's appeal of the district

court's denial of his 28 U.S.C. § 2255 petition.

## STATEMENT OF THE ISSUE

**I.      WHETHER THE DISTRICT COURT ERRED IN DENYING
SIMONS' CLAIMS – FILED IN BOTH OF HIS §2255 MOTIONS – THAT
HIS COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE WHEN HE
FAILED TO CHALLENGE THE SUFFICIENCY OF THE AFFIDAVIT
SUPPORTING THE SEARCH WARRANT RELATED TO THE HOME OF
SIMONS' MOTHER.**

## STATEMENT OF THE CASE

Mr. Simons was charged with 18 U.S.C. § 1470, 18 U.S.C. § 2423(a), 18

U.S.C. § 2423(b), 18 U.S.C. § 2251(a), and 18 U.S.C. § 2252A(5)(B). (R1A, 1; R1B,

1).[1]  On June 29th, 2010 Simons entered a guilty plea. (R1A, 1; R1B, 1).  Simons

received concurrent sentences, the lengthiest being a life sentence.  (R1A, 1; R1B-

---

[1] Petitioner was charged in two separate indictments and filed two §2255 petitions.
The petition in 5:11-CV-8027 was directed at the underlying conviction and
sentence in 5:08-CR-247 and the petition in 5:11-CV-8028 was direct at the
underlying conviction and sentencing in 5:08-CR-408.   While the underlying
charges and sentences are slightly different, the underlying challenges and the issues
raised are identical.  As such, for the purposes of this brief, record references
indicating "A" will refer to documents filed in 5:11-CV-8027 and "B" will refer to
the documents filed in 5:11-CV-8028.

1

1).  Simons plea was entered without a plea agreement and upon the advice of counsel. (R2A, 1-2; R2B, 1-2).

On June 27th, 2011, Simons filed *pro se* post-conviction petitions asserting various grounds for relief including counsel's failure to challenge the search warrant affidavit. (R1A, 5; R1B, 5).  Subsequently, undersigned counsel was appointed to assist Simons.  (R8A, 4; R17B, 4).  Among other things, counsel requested an evidentiary hearing to explore the reasons why counsel did not seek to suppress the fruits of the search warrant. (R12A; R21B).  The request for the hearing was denied. (R14A, 2; R23B, 2).

The magistrate summarily dismissed Simons' claims with respect to failure to challenge the search warrant.  (R17A, 12-16; R26B, 12-16).  Simons objected to the magistrate's Report and Recommendation specifically objecting to the magistrate's dismissal of Simons' claims regarding the failure to challenge the search warrant. (R18A, 4-5; R27B, 4-5).  The district court adopted the magistrate's R&R over Simons' objections and dismissed Simon's petitions with prejudice.  (R20A; R29B & R21A; R30B).

Simons sought a Certificate of Appealability from the district court and filed a contemporaneous Notice of Appeal.  (R22A; R31B & R23A; R32B).  The district court denied Simons' application.  (R30A; R39B).  Simons' application for a Certificate of Appealability was granted, in part, by this Court on February 11, 2016.

## STATEMENT OF FACTS

On May 2, 2006, the government obtained a search warrant for the Petitioner's home. (R12A, 1; R21B, 1). The search warrant was executed on May 4, 2006. (R12A, 1; R21B, 1). The fruits of that search led to the seizure of items for which Mr. Simons was exposed to up to a total of 310 years in prison in Case No. 5:08-CR-247-CLS-PWG. (R12A, 1; R21B, 1). Mr. Simons was ultimately sentenced to a term of 30 years on the counts related to the fruits of the May 2, 2006 search warrant. (R12A, 1; R21B, 1). Mr. Simons was sentenced to life in Case No. 5:08-cr-0408-CLS-TMP.[2] (R12A, 2; R21B, 2).

Prior to the issuance of the search warrant, the parents of an underage girl in Texas became concerned about their daughter's on-line activities. (R12A, 3; R21B, 3). Law enforcement identified an e-mail address used to send contraband images to the daughter. (R12A, 3; R21B, 3). Law enforcement determined that Mr. Simons could be linked to the e-mail address. (R12A, 3; R21B, 3). Law enforcement determined where Mr. Simons lived. (R12A, 3; R21B, 3). Law enforcement sought and obtained a search warrant to search Mr. Simons' home. (R12A, 3; R21B, 3).

The search warrant was issued on May 2, 2006. (R12A, 3; R21B, 3; R33A; R42B (SEALED)). The most recent date referenced in the affidavit alleging

---

[2] The first six counts of this indictment are also based on fruits of the May 2, 2006 search warrant. (R12A, 2; R21B, 2).

3

criminal activity, the sending of an e-mail containing contraband images, was November 23, 2005. (R12A, 3; R21B, 3). Roughly 160 days passed between the alleged e-mail and the issuance of the search warrant. (R12A, 3; R21B, 3; R33A, 21; R42B, 21 (SEALED)). An issue of the staleness of the affidavit was, and is, a colorable, non-frivolous challenge to the search warrant. (R12A, 3; R21B, 3; R33A; R42B (SEALED)).

The affidavit in support of the search warrant failed to make any attempt to connect the e-mail address used with the home to be searched. (R12A, 4; R21B, 4; R33A, 20-24, R42B, 20-24 (SEALED)). Upon information and belief, the normal law enforcement investigation would be to connect the sending of the e-mail with a specific IP address. (R12A, 4; R21B, 4). The IP address can then be used to identify the home or business from whence the subject e-mail was sent. (R12A, 4; R21B, 4). An e-mail address itself provides no information from which a determination can be made that contraband can be found at a particular location. (R12A, 4; R21B, 4). An e-mail address can be used from an internet café in Pakistan. (R12A, 4; R21B, 4). An e-mail address can be used from a public library. An e-mail address can literally be used from any computer located anywhere in the world. (R12A, 4; R21B, 4).[3]

---

[3] The search warrant affidavit asserts that a search warrant was directed to Yahoo! in order to obtain the Texas girl's e-mail activity. (R12A, 1; R21B, 1; R33A, 23-24; R42B, 23-24). The fruits of that search warrant should have indicated the IP address of the sender's e-mail and there is no reason to believe that the material Yahoo! would have provided would not have contained that information. (R12A, 1; R21B,

The affidavit does not confirm, or suggest any reason to believe, that the home to be searched contains a computer, a telephone line, a modem, or any means whatsoever necessary to the sending of an e-mail from within. (R12A, 5; R21B, 5; R33A; R42B (SEALED)).

Simons retained counsel for the initial trial proceedings at a cost of $25,000. (R29A, 25 & 47; R38B, 25 & 47). Retained counsel made no effort to challenge the search warrant. (R12A; R21B). Retained counsel signed an affidavit presented by the government in the post-conviction proceedings below asserting that there were no available challenges to the search warrant. (R5A, 5; R8B, 5).

## STANDARD OF REVIEW

This court reviews the issue of whether counsel is ineffective as a mixed question of law and fact reviewed *de novo* on appeal. *United States v. Bender,* 290 F.3d 1279, 1284 (11th Cir. 2002).

## SUMMARY OF THE ARGUMENT

Simons was charged with and entered a guilty plea without a plea agreement on the advice of counsel to serious offenses for which a life sentence was available under the statute of conviction. 18 U.S.C. § 2423(a). More importantly, the United

---

1). The IP address may have indicated that the e-mail was sent from another location other than the home to be searched and the failure to advise the issuing magistrate would demonstrate bad faith and would eliminate any "good faith" reliance upon the search warrant. (R12A, 1; R21B, 1).

5

States Guideline offense levels for one of the offenses Simons plead guilty to called for a life sentence. (R17A, 11; R26, 11). The record is devoid of any effort on the part of counsel to avoid the imposition of a life sentence prior to the entry of the guilty plea. (R22A-2; R31B-2). Simons' requests to explore via an evidentiary hearing counsel's failure to file a Motion to Suppress, were denied. (R14A, 2; R23B, 2).

The Sixth Amendment requires a lawyer do more than nothing on his client's behalf in an effort to avoid a life sentence where that is the maximum available sentence. This is especially true where legitimate challenges to the search warrant affidavit are present and success would mean the exclusion of substantial evidence.[4] Simons has established that legitimate Fourth Amendment claims could have been raised but were not. (R12A, 1-5; R21B, 1-5).

The information within the warrant is arguably stale and there is no connection between the home to be searched and the e-mail account within the search warrant application. (R12A, 1-5; R21B, 1-5; R33A, R42B (SEALED)). Moreover, it is somewhat suspicious that no IP address was referenced in the search warrant

---

[4] See, American Bar Association Standards for Defense Counsel 4-1.2 The Function of Defense Counsel
(b) The basic duty defense counsel owes to the administration of justice and as an officer of the court is to serve as the accused's counselor and advocate with courage and devotion and to render effective, quality representation.

6

application despite the fact that there is reason to believe that the sender's IP address would be available due to the information obtained from Yahoo!.  (R33A, 23-24, R42B, 23-24 (SEALED)).

Counsel should have taken note of the fact that the warrant application was flawed and acted accordingly by challenging the search warrant. (R12A, 4-5; R21B, 4-5).  Counsel acted unreasonably in not noticing and in not responding to the apparent flaws in the search warrant application especially in a case where a finding of guilt meant a life sentence.  It is certainly not unfair to say that the record reveals that Simons was found guilty and sentenced to life in the complete absence of any meaningful or substantive assistance of counsel.

Simons requests that the writ be granted upon a finding that trial counsel's performance ineffective as a matter of law or to remand this matter to the district court for evidentiary hearings related to counsel's failure to file a motion to suppress.

## ARGUMENT

**WHETHER THE DISTRICT COURT ERRED IN DENYING SIMONS' CLAIMS – FILED IN BOTH OF HIS §2255 MOTIONS – THAT HIS COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE WHEN HE FAILED TO CHALLENGE THE SUFFICIENCY OF THE AFFIDAVIT SUPPORTING THE SEARCH WARRANT RELATED TO THE HOME OF SIMONS' MOTHER.**

A)    Ineffective Assistance Generally

In order to present a successful claim of ineffective of counsel Simons must

7

show that: 1) his counsel's performance was deficient and 2) that Simons was prejudiced by his counsel's deficient performance. See, *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to prevail on the performance prong under *Strickland* Simons must show that his counsel's actions or inactions were unreasonable and did not fall within a broad range of professionally competent representation. See, *Payne v. Allen*, 539 F.3d 1297, 1317 (11th Cir. 2008). In order to establish prejudice, Simons "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Marquand v. Sec'y, Dep't of Corr.*, 429 F.3d 1278, 1305 (11th Cir. 2005). A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, at 694.

B) Counsel's Performance Was Deficient

Effective and constitutionally adequately counsel, if it is to have any meaning, requires that counsel, using his understanding of the law and his practical experience as a lawyer, to craft an intelligent strategy designed to achieve some result that is tangibly superior to the result sought by the Government.[5] A strategy designed to achieve a result better than could be expected in the absence of counsel ought to be expected as a minimum requirement if the Sixth Amendment is to have meaning.

---

[5] It is respectfully suggested that given that a finding of guilt exposed the Petitioner to a life sentence under the United States Sentencing Guidelines, there was a heightened need for proceeding prudently and intelligently.

8

This should have begun with a recognition that a life sentence would necessarily follow any adjudication of guilt. As such, efforts at utilizing Simons' substantive and procedural rights as leverage to extract from the Government a negotiated plea resulting in a sentence less than that of life without parole should have been paramount. Failing resolution by agreement, litigate the case, preserving whatever errors can be preserved for appeal in the hope that a negotiated result can be achieved in the future.[6]

In choosing the path of entering a blind guilty plea without first seeking to exclude much of the evidence against his client, counsel acted well outside the scope of reasonableness and any range of professionally competent assistance.[7] This is

---

[6] The Magistrates' R&R suggests that counsel may have chosen to refrain from filing a motion to suppress for fear of harming plea negotiations. (R17A, 15; R26B, 15). It should be noted that aggressively pursuing such pre-trial matters lead to favorable negotiations and do not inhibit negotiations. As importantly, there is no indicia that settlement was ever attempted, and it clear that no agreement was reached. The Magistrate's R&R also suggests that success as to a motion to suppress would have been fruitless as it would not have resolved favorably all of the pending allegations. (R17A, 16, R26B, 16). While it is true that no successful motion to suppress would have resulted in a dispositive resolution as to the most serious offense and the life sentence, it is without question that the calculations with respect to how to resolve the matter would (and should) have changed dramatically with a successful motion to suppress. In short, had the motion to suppress been successful, in the absence of an agreement for a disposition less than life, litigation would not only be the only option, the chances of being successful at trial would have been much greater without the suppressed evidence.

[7] ""[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Ibid.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery. Such a complete lack of pretrial preparation puts at

evidenced by the magistrate's own observations about the nature of the petitioner's conduct.[8]  This is also evidenced by the magistrate's observations of the resulting sentence stating "[i]ndeed, it is doubtful that there is even a non-frivolous argument that a life sentence is "substantively unreasonable" in light of the facts in this case." (R17A, 11; R26B, 11).

Under these facts and this exposure, how could any attorney advise his client that it is in his best interest to forego litigating matters such as a motion to suppress that might reduce his exposure and might lead to a negotiated settlement that pleading guilty would never achieve?[9]  Counsel also had to consider that because

---

risk both the defendant's right to an "'ample opportunity to meet the case of the prosecution,' " *id.,* at 685, 104 S.Ct., at 2063 (quoting *Adams, supra,* 317 U.S., at 275, 63 S.Ct., at 240), and the reliability of the adversarial testing process. See 466 U.S., at 688, 104 S.Ct., at 2065." *Kimmelman v. Morrison,* 477 U.S. 365, 385, 106 S. Ct. 2574, 2588, 91 L. Ed. 2d 305 (1986).

[8] "[Simons] sought out vulnerable young girls, some as young as 12 years old, enticed them into "egregious and despicable" acts, which he videotaped and cataloged *ad nauseum* in diaries he kept for almost a decade. His diaries record the graphic details of rape and anal and oral sodomy of multiple young girls.  He continued to rape children and to produce pornographic videotapes of the encounters for years *after* his mother's house was searched and he was caught with pornographic materials. Not only did he know that his actions were criminal, he boasted in his diaries about which crimes he had committed and how many times he had committed them." (R17A, 7-8; R26B, 7-8.)

[9] While it is no doubt true that the offense for which Simons was sentenced to life would not have evaporated with a successful Motion to Suppress, it is well known to any litigator that nobody in the criminal justice system (not the prosecutor, the judge, the child's parents, the child, law enforcement, nor the lawyer for the accused) wants an alleged child victim to have to go through the trauma of confronting his/her alleged abuser in court.  Cases of this nature are negotiated to reasonable results routinely to avoid that prospect.  An agreement to a lengthy prison sentence (a

some of the offense conduct continued after the initiation of proceedings, that the chances of avoiding a sentence of life without parole, without more than simply pleading Simons guilty, were non-existent.

Inasmuch as the magistrate has found that the resulting sentence was not only reasonable and necessary but also not susceptible to any "non-frivolous" objection, the judgment of counsel that it was in his client's best interests to throw himself on the mercy of the court was, in and of itself, unreasonable and deficient. (R17A, 11; R26B, 11). It is logically inconsistent to suggest that the outcome (life without parole) is both a reasonable and an obvious result to such a degree that any subsequent objection to that sentence is frivolous and at the same time suggest that it was reasonable for counsel to blindly send his client directly into that result. One of those two judgments is wrong. It is apparent that the path counsel chose was grossly unreasonable and deficient under the facts and the law.

C) Counsel's Deficient Performance Should Be Presumed Prejudicial

Because counsel had no reasonable expectation that the course chosen would

---

sentence less than life) with a life-long label as a sex offender is generally deemed sufficient when weighed against the prospect of forcing an alleged child victim to testify at trial. A successful Motion to Suppress, in many similar circumstances, would lead to promising settlement negotiations. Rather than trying to create the conditions under which such discussions could occur, counsel did nothing and, because the requested hearing was denied, the record does not reflect the reasons why counsel chose this course and whether Simons was reasonably aware of the options available to him.

result in any outcome but a life sentence, and because there was no strategy to obtain a sentence less than life and given that there was no apparent understanding of how to achieve those goals, counsel cannot be credited for acting reasonably. *See Hinton v. Alabama*, 134 S. Ct. 1081, 1089 (2014) ("An attorney's ignorance of a point of law that is fundamental to his case combined with his failure to perform basic research on that point is a quintessential example of unreasonable performance under *Strickland*"). Therefore, it is asserted that in light of all of the evidence that Simons was convicted and sentenced in the absence of counsel under circumstances for which prejudice need not be found. *See United States v. Cronic*, 466 U.S. 648 (1984). The petitioner asserts that counsel's actions, or lack thereof, were unreasonable in a context, and to a degree, that prejudice must be presumed. *Id.*

D) Counsel's Failure to File a Motion to Suppress Prejudiced Simons

The most promising course of action available to counsel was to challenge the search warrant application the execution of which led to the discovery of much of the evidence available to the Government. The fruits of the search led to the seizure of items for which Mr. Simons was exposed to up to a total of 310 years in prison. (R12A, 1; R21B, 1; R33A, 3; R42B, 3 (SEALED)). Mr. Simons was ultimately sentenced to a term of 30 years on the counts related to the fruits of the May 2, 2006 search warrant. (R12A, 1; R21B, 1).

It was clearly in Mr. Simons' interests to pursue any and all remedies to try

12

and exclude the fruits of the search from evidence. While it is true that Mr. Simons faced a life sentence in Case No. 5:08-cr-0408-CLS-TMP[10] without the fruits of the search, Mr. Simons' decision to accept a life without the possibility of parole sentence via a blind plea was informed by the knowledge that the fruits of the May 2, 2006 search would be available to be used against him. The availability of that evidence to the government as described in detail by the magistrate in the R&R made the prospect of success at trial non-existent. (R17A, 7-8; R26B, 7-8.).

However, had Mr. Simons faced the decision between a trial or a plea without the fruits of the May 2, 2006 search warrant, given that Simons faced the imposition of life without the possibility of parole sentence, he obviously would have insisted on trial and would not have entered a guilty plea. An exercise of those trial rights could have led to a negotiated settlement for less than a life without parole sentence, an acquittal on one or more counts or the exploitation of any number of legal issues that necessarily arise from contested litigation in cases of substantial consequence to the Defendant. In short, the choice of whether or not to challenge the search warrant in order to suppress the fruits of that search from consideration in these matters was consequential. Counsel's failure to act was prejudicial to Mr. Simons' interests.

       i.    Legitimate Challenges to the Search Warrant, Including

---

[10] The first six counts of this indictment are also based on fruits of the May 2, 2006 search warrant. (R12A, 2; R21B, 2).

Staleness and a Lack of A Connection Between the Contraband Sought and the Place to be Searched, Were Available to Simons' Counsel.

Legitimate challenges to the search warrant could have been raised at the trial court level and, if necessary, on appeal. Counsel's failure to pursue a motion to suppress can be considered ineffective assistance of counsel even where the petitioner has previously plead guilty and does not premise collateral relief upon factual innocence.[11]

As previously noted the search warrant was issued on May 2, 2006. (R12A, 3; R21B, 3; R33A; R42B (SEALED)). However, the most recent date referenced in the affidavit alleging criminal activity, the sending of an e-mail containing

---

[11] "We also reject the suggestion that criminal defendants should not be allowed to vindicate through federal habeas review their right to effective assistance of counsel where counsel's primary error is failure to make a timely request for the exclusion of illegally seized evidence -- evidence which is "typically reliable and often the most probative information bearing on the guilt or innocence of the defendant." *Stone*, 428 U.S., at 490. While we have recognized that the "'premise of our adversary system of criminal justice . . . that partisan advocacy . . . will best promote the ultimate objective that the guilty be convicted and the innocent go free,'" *Evitts*, 469 U.S., at 394, quoting *Herring v. New York*, 422 U.S. 853, 862 (1975), underlies and gives meaning to the right to effective assistance, *Cronic, supra*, at 655-656, we have never intimated that the right to counsel is conditioned upon actual innocence. The constitutional rights of criminal defendants are granted to the innocent and the guilty alike. Consequently, we decline to hold either that the guarantee of effective assistance of counsel belongs solely to the innocent or that it attaches only to matters affecting the determination of actual guilt." *Kimmelman v. Morrison*, 106 S. Ct. 2574, 2585 (U.S. 1986).

contraband images, is November 23, 2005. (R12A, 3; R21B, 3; R33A, 21; R42B, 21 (SEALED)). Therefore, roughly 160 days passed between the alleged e-mail and the issuance of the search warrant. (R33A, 21; R42B, 21 (SEALED)). Thus the issue of the staleness of the affidavit was a legitimate challenge to the search warrant that was waived by counsel.

A staleness challenge leading to the suppression of seized evidence is a legitimate challenge in a variety of contexts. See, *Cauchon v. United States*, 824 F.2d 908, 911 (11th Cir. 1987)("Determinations of timeliness as an element in probable cause must be made on a case by case basis") citing *Sgro v. United States*, 287 U.S. 206, 210, 53 S. Ct. 138, 140, 77 L. Ed. 260 (1932) ("It is manifest that the proof must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time.") An analysis of whether the affidavit in support of the warrant is stale, courts "may consider the maturity of the information, nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched." *United States v. Harris*, 20 F.3d 445, 450 (11th Cir. 1994). As the affidavit lacks any specificity with respect to many of the factors to be considered within the confines of a staleness challenge, such a claim was legitimate and the failure to raise it prejudiced Simons' rights.

Moreover, the affiant makes no attempt to connect the e-mail address allegedly used by Simons to send contraband images to the Texas teenager with the with the home sought to be searched by law enforcement. (R12A, 5; R21B, 5; R33A, 20-24, R42B, 20-24 (SEALED)).    Probable cause to support a search warrant of a particular home only exists where, upon the consideration of the totality of the circumstances[12], lead to a conclusion that there is a fair probability of finding contraband or evidence at that location to be searched.    See, *United States v. Kapordelis,* 569 F.3d 1291, 1310 (11th Cir.2009).    Upon information and belief, the normal law enforcement investigation would be to connect the sending of the e-mail as being sent from a specific IP address.    The IP address can then be used to identify the home or business from whence the suspect e-mail was sent.    An e-mail address itself provides zero information from which a determination can be made that contraband can be found at a particular location.    The affidavit does not confirm, or suggest any reason to believe, that the home to be searched contains a computer, a telephone line, a modem, or any means whatsoever necessary to the sending of an e-mail from within.    (R33A; R42B (SEALED)).

An e-mail address can be used from an internet café in Pakistan.    (R12A, 4; R21B, 4).    An e-mail address can be used from a public library.    An e-mail address

---

[12] Staleness and lack of particularity are not independent issues.    Rather both obvious flaws must be viewed together in determining whether counsel acted reasonably in failing to act in response to them under all of the circumstances of this case.

can literally be used from any computer located anywhere in the world. (R12A, 4; R21B, 4). A search of reported cases does not reveal any cases where law enforcement relied exclusively on connecting a person to an e-mail address and then obtaining a search warrant for that persons' residence. The cases reference an additional step of connecting the sending of the contraband to the residence to be searched via an IP address and/or some other additional information gleaned from an investigation connecting the contraband with the home.[13]  Permitting a search of the nature undertaken here would be tantamount to authorizing the search of the home of a Nevada resident today simply because that person's car was found to contain marijuana in Massachusetts 160 days ago. While the possibility exists that such a search might result in the finding of contraband, mere possibilities do not

---

[13]  Simons' position is not the position taken by the appellant in *United States v. Vanbrackle*, 397 Fed. Appx. 557 (11th Cir. 2010). Simons does not suggest that an IP address is *always* necessary to a validate a search warrant in this context. In *Vanbrackle* the affiant went to considerable lengths to connect the home to be searched with the contraband sought. *Vanbrackle*, at 560. Rather, Simons argues that the warrant cannot be valid where *only* an e-mail address is used to justify a search of a private home. This is especially true where the information is also stale. If a 160-day old text image sent from a phone showing an image of a large quantity of marijuana, taken at an unknown location, would legally support the issuance of a search warrant to search the phone owner's residence to search for marijuana, then there is no Fourth Amendment.

establish probable cause to believe that contraband is contained in the home to be searched.[14]

It is also worth noting that the search warrant affidavit asserts that a search warrant was directed to Yahoo! in order to obtain the Texas girl's e-mail activity. (R33A, 23-24; R42B, 23-24 (SEALED)). The fruits of that search warrant should have contained the IP address of the sender of the subject e-mail and there is no reason to believe that the material Yahoo! provided would not have contained that information. If the IP address provided by Yahoo! was then linked to the home that was searched, as it was not included in the affidavit, it would not save it from a facial challenge to the adequacy of the search warrant application. However, if the information received from Yahoo! indicated that the subject e-mail was sent from any other IP address than the home to be searched, then the failure to so advise the

---

[14] Under the circumstances, the "good faith" exception would not save the search from the exclusionary rule. *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. Fla. 2003) (The good faith exception does not apply "(3) where the affidavit supporting the warrant is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where, depending upon the circumstances of the particular case, a warrant is so facially deficient--i.e., in failing to particularize the place to be searched or the things to be seized--that the executing officers cannot reasonably presume it to be valid."

issuing magistrate would demonstrate bad faith and would eliminate any "good faith" reliance upon the search warrant. *United States v. Robinson*, 336 F.3d 1293, 1296 (11th Cir. 2003)(The "good faith" exception does not apply "where the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth.")

Simons was prejudiced by counsel's inaction with respect to the search warrant. Given that Mr. Simons was facing a life without the possibility of parole sentence, it was incumbent upon counsel to explore all possibilities available in order to achieve a better result than would have been achieved in the total absence of counsel. Counsel's failure to file a motion to suppress resulted in Mr. Simons' decision to forego his right to trial, thereby prejudicing Simons.

    ii.    The Magistrate's Review Of The Search Warrant Application Does Not Substitute For An Evidentiary Hearing.

The magistrate denied Simons' request for a hearing to determine why counsel failed to act with respect to the search warrant. (R14A, 2; R23B, 2). Subsequently, the magistrate opined that the Search Warrant Application was supported by probable cause. (R17A, 13; R26B, 13). The magistrate's conclusions are not dispositive of the issues in this appeal.

First, a magistrate signed the original warrant based upon the application. (R33A; R42B (SEALED)). Presumably, that magistrate came to the same

conclusions regarding probable cause prior to signing it. If the signing of a search warrant by a judicial officer pretermitted challenges, there would be no need for any suppression hearings.

Second, the magistrate's R&R only deals with Simons' staleness challenge. (R17A, 13-14; R26B, 13-14). The R&R does not address the question of whether there was sufficient probable cause to believe that contraband would be located in the residence to be searched. (R17A; R26B). The R&R does not address the question whether information may have been intentionally omitted from the warrant application. (R17A; R26B). The R&R does not address the question of Simons' knowing waiver. (R17A; R26B). The R&R does not address what advice was given to Mr. Simons and whether that advice was reasonable. (R17A; R26B). The R&R does not address waiver in the context of Simons' exposure to a life without parole sentence. (R17A; R26B).

E)    Remand For Further Proceedings

In the absence of a finding that counsel's complete absence of advocacy meriting granting the writ as a matter of law, Simons requests that this court remand this matter with directions to conduct evidentiary hearings to resolve important questions related to counsel's failure to move to suppress evidence. These questions include whether counsel communicated to Simons "all of the information he had (and reasonably should have had) bearing on the search warrant issue." *Davidson v.*

*United States*, 138 Fed. Appx. 238, 239 (11ᵗʰ Cir. 2005). Whether counsel gave Simons "reasonable advice concerning th[e] issue" of whether to proceed with a motion to suppress. *Id.*, at 239. Whether Simons would have plead without reservation of his rights to pursue a motion to suppress at the district court and appellate court level had he been reasonably apprised of these issues. See, *Id.*; *Hill v. Lockhart*, 474 U.S. 52 (1985).

It has been submitted that trial counsel's choice to plead guilty without any reasonable expectation of a sentence less than life and counsel's failure to have or to execute a plan for dealing with the failure in the strategy of pleading guilty and exposing Simons to a life sentence renders trial counsel's conduct unreasonable under *Cronic*. It has been requested that the court conduct a further inquiry (evidentiary hearings) into this matter in order to determine whether trial counsel acted reasonably in pursuing a plan where he offered a plead guilty without any agreement and exposed his client to a life sentence without any reasonable expectation of avoiding the punishment or any knowledge of how to proceed at sentencing with a plan designed to avoid a life sentence.

A hearing would resolve whether counsel acted with or without a reasonable expectation that a sentence of less than life was achievable under the facts and law in this case. If counsel had an expectation of a sentence less than life, it should be determined at a hearing whether counsel's expectation was reasonable and what the

plan was to achieve a better result. In addition, counsel's plan for dealing with a failure of his strategy, should a life sentence be imposed anyway, ought to be determined. If counsel expected a life sentence, a hearing could help reach of a determination of how that judgment was made and whether the petitioner was informed that counsel had no hope but that of a life sentence. If counsel had no reasonable expectation of anything but a life sentence, a hearing could be used to determine why counsel advised the petitioner that the best course of action was to enter a guilty plea without any agreement with the government. Finally, if counsel informed his client that he had no hope of any result other than a life sentence, the question of whether the Petitioner, after having been so informed, would have chosen trial over a guilty plea would need to be resolved as well.[15] *See Holmes v. United States*, 876 F.2d 1545, 1552 (11th Cir. 1989); *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 370 (1985).

---

[15] On information and belief, the Petitioner testified at an evidentiary hearing that he would not have gone forward with a guilty plea had he been aware that there was no hope for a sentence of less than life.

## **CONCLUSION**

Simons requests this Honorable Court grant the writ finding trial counsel's performance ineffective as a matter of law or to remand this matter to the district court for evidentiary hearings related to counsel's failure to file a motion to suppress.

Respectfully submitted,

s/ Derek Drennan
DEREK DRENNAN
Attorney for Appellant

Of Counsel:
KIRK DRENNAN LAW, P.C.
500 Office Park Drive
Suite 100
Birmingham, AL 35223
205-803-3500

## **CERTIFICATE OF COMPLIANCE**

The requisite sections of this brief, including the Statement of the Case through Certificate of Service, contain 6,105 words and are therefore in compliance with the type-volume limitation.

s/ Derek Drennan
DEREK DRENNAN
Attorney for Appellant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 22nd day of March, 2016, the foregoing brief was served on counsel for the government-appellee by first-class United States mail, postage prepaid, addressed as follows:

JOYCE WHITE VANCE, *United States Attorney*
MICHAEL BILLINGSLEY, *Assistant United States Attorney*
United States Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama 35203
(205) 244-2001

On this same date, the original and additional copies of the brief were filed by first-class certified mail, postage prepaid, addressed as follows:

Clerk's Office – Appeals No. 15-11928-D
U.S. Court of Appeals – Eleventh Circuit
56 Forsyth Street NW
Atlanta, GA 30303

The Internet upload will be completed by March 29, 2016 as required.

*s/ Derek Drennan*
DEREK DRENNAN