No. 15-11928-DD

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

JOHN LAWSON SIMONS,
*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee*.

_____

On Appeal from the United States District Court
for the Northern District of Alabama, Northeastern Division
No. 5:11-cv-08027-CLS-TMP
No. 5:11-cv-08028-CLS-TMP

_____

## BRIEF OF APPELLEE

_____


JOYCE WHITE VANCE
United States Attorney
Northern District of Alabama

RAMONA C. ALBIN
Assistant United States Attorney

United States Attorney's Office
1801 Fourth Avenue North
Birmingham, Alabama  35203
(205) 244-2001

**No. 15-11928-DD**

*John Lawson Simons v. United States of America*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

The United States Attorney for the Northern District of Alabama, through undersigned counsel, certifies that, in addition to the persons identified by Simons, the following person may have an interest in the outcome of this case:

Albin, Ramona C., Assistant United States Attorney for the Northern District of Alabama, representing the United States in these proceedings.


*/s/*RAMONA C. ALBIN
Assistant United States Attorney

C-1 of 1

## STATEMENT REGARDING ORAL ARGUMENT

The United States does not request oral argument. The record and the parties' briefs adequately present the factual and legal issues necessary for disposition of this appeal.  *See* Fed. R. App. P. 34(a)(2)(C); 11th Cir. R. 34-3(b)(3).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
    DISCLOSURE STATEMENT ................................................................C-1

STATEMENT REGARDING ORAL ARGUMENT...................................................i

TABLE OF CONTENTS ......................................................................... ii

TABLE OF CITATIONS..........................................................................iv

STATEMENT OF SUBJECT-MATTER AND
    APPELLATE JURISDICTION ................................................... vii

STATEMENT OF THE ISSUE..................................................................1

STATEMENT OF THE CASE...................................................................2

    A. The Indictments Charge Simons with 22 Substantive Counts; Simons
       pleads guilty.............................................................................2

    B. Simons's Offense Conduct. ..................................................4

    C. The Search Warrant Affidavit Established Probable Cause. ....................8

    D. After an Extensive Rule 11 Colloquy, the District Court Accepted
       Simons's Pleas Knowingly and Voluntary..............................................10

    E. The District Court Sentences Simons. ...................................11

    F. Simons Files Two § 2255 Motions. .......................................13

    G. The District Court Denies Simons's Ineffective-Assistance Claim
       Related to the Search Warrant Because Simons Did Not Show that
       Counsel's Performance was Objectively Unreasonable or that Simons
       Suffered Any Prejudice. ..........................................................15

STANDARDS OF REVIEW ...................................................................17

SUMMARY OF ARGUMENT ..............................................................18

ARGUMENT ........................................................................................19

Ⅰ. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE
   THE SUFFICIENCY OF THE SEARCH WARRANT AFFIDAVIT..............19

   A. Simons cannot show deficient performance...................................19

   B. Simons cannot establish prejudice...............................................24

CONCLUSION .....................................................................................28

CERTIFICATE OF SERVICE ..............................................................29

# TABLE OF CITATIONS

**Cases**

*Page*

*Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000) (*en banc*).............19, 24

*Craker v. McCotter*, 805 F.2d 538 (5th Cir. 1986) .................................................27

*Harich v. Dugger*, 844 F.2d 1464 (11th Cir. 1988) (*en banc*)...............................24

*Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366 (1985)..............................................25

*Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292 (11th Cir. 2005).................20, 24

*McKay v. United States*, 657 F.3d 1190 (11th Cir. 2011)................................17, 18

*Murray v. United States*, 145 F.3d 1249 (11th Cir. 1998) (per curiam) ...............17

*Osley v. United States*, 751 F.3d 1214 (11th Cir. 2014) ........................................18

*Rhode v. United States*, 583 F.3d 1289 (11th Cir. 2009) (per curiam) .................17

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052 (1984) ...................19, 20

*United States v. Bervaldi*, 226 F.3d 1256 (11th Cir. 2000)....................................20

*United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984)........................18, 27

*United States v. Fortson*, 194 F.3d 730 (6th Cir. 1999)..........................................24

*United States v. Leon*, 468 U.S. 897, 104 S. Ct. 3405 (1984)................................22

*United States v. McBurnette*, 382 F. App'x 813 (11th Cir 2010) ..........................21

*United States v. Medlock*, 12 F.3d 185 (11th Cir. 1994)........................................27

iv

*United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010)...................................21

*Waters v. Thomas*, 46 F.3d 1506 (11th Cir. 1995) *(en banc)*..................................23

## Statutes

18 U.S.C. § 1470 ................................................................................3

18 U.S.C. § 2252A(a)(1) .....................................................................3

18 U.S.C. § 2252(a)(5)(B) ...................................................................2

18 U.S.C. § 2423(a) .........................................................................3, 10

18 U.S.C. § 2423(b) ........................................................................2, 3

18 U.S.C. § 2251(a) ............................................................................3

28 U.S.C. § 1291 ........................................................................... viii

28 U.S.C. § 1331 ............................................................................ vii

28 U.S.C. § 2253(c)(1)(B) ............................................................. viii

28 U.S.C. § 2255 .................................................................... *passim*

28 U.S.C. § 2255(a) ....................................................................... vii

## Other Authorities

11th Cir. R. 34-3(b)(3) ........................................................................i

Fed. R. App. P. 34(a)(2)(C) .................................................................i

## STATEMENT OF SUBJECT-MATTER AND
## APPELLATE JURISDICTION

John Lawson Simons was charged with a total of 22 substantive counts in two separate indictments. (Cr. A-Doc. 1; Cr. B-Doc. 1.)[1] He pleaded guilty to all 22 counts and judgment was entered in August 2010. (Cr. A-Doc. 15; Cr. B-Doc. 17.) He filed two motions to vacate his convictions and sentence under 28 U.S.C. § 2255 in June 2011. (Cv. A-Doc. 1; Cv. B-Doc. 1.) The district court denied his § 2255 motions on March 31, 2015. (Cv. A-Doc. 21; Cv. B-Doc. 30.) The district court had jurisdiction under 28 U.S.C. §§ 1331 and 2255(a). Simons filed a timely notice of appeal and a motion for a certificate of appealability (COA) on April 28, 2015. (Cv. A-Docs. 22, 23; Cv. B-Docs. 31, 32.) His motion concerning his convictions in Case No. 5:08-cr-247 (first indictment) raised one ineffective assistance claim—"that counsel failed to challenge the sufficiency of the affidavit supporting the search warrant related to the home of Simon's mother." (Cv. A-Doc. 1). His motion concerning his convictions in Case No. 5:08-cr-408 (second indictment) contained the same claim and two others. (Cv. B-Doc. 1.) The district court denied Simons's motions for a COA. (Cv. A-Doc. 30; Cv. B-Doc. 39.) This Court granted a COA as to

---

[1] "Cv. A-Doc." refers to entries in the civil docket for Section 2255 proceedings in Case No. 5:11-cv-08027, and "Cr. A-Doc." refers to entries in the docket for the underlying criminal proceedings in Case No. 5:08-cr-00247-CLS-PWG (first indictment). "Cv. B-Doc." refers to entries in the civil docket for proceedings in Case No. 5:11-cv-08028, and "Cr. B-Doc." refers to entries in the underlying criminal proceedings in Case No. 5:08-cr-00408-CLS-TMP (second indictment).

the ineffective-assistance claim concerning the search warrant affidavit, but denied it as to the other issues. This Court has jurisdiction under 28 U.S.C. §§ 1291 and 2253(c)(1)(B).

## STATEMENT OF THE ISSUE

This Court issued a certificate of appealability limited to:

Whether the district court erred in denying Simons's claims—filed in both of his 28 U.S.C. § 2255 motions—that his counsel was constitutionally ineffective when he failed to challenge the sufficiency of the affidavit supporting the search warrant related to the home of Simons's mother.

## STATEMENT OF THE CASE

John Lawson Simons is a child predator. He sought out vulnerable young girls, enticed them into sexual activity, and catalogued his despicable acts in diaries he kept for almost a decade. The diaries catalogued the graphic details of Simons's rape and oral and anal sodomy of multiple young girls; he even catalogued the specific crimes he committed each year. Even after a federal search warrant was executed at his residence in May 2006, Simons continued to rape children and produce pornographic videos of his encounters.

### A.    The Indictments Charge Simons with 22 Substantive Counts; Simons pleads guilty.

Simons was charged with a total of 22 substantive counts in two separate indictments. The first indictment, filed on June 26, 2008, included twelve counts. (Cr. A-Doc. 1.)   The second indictment, filed on October 28, 2008, included ten substantive counts.[2] (Cr. B-Doc. 1.) He pleaded guilty to all substantive counts in each indictment. (Cr. A-Doc. 15; Cr. B-Doc. 17.)

The first indictment charged: Possession of Child Pornography in May 2006, in violation of 18 U.S.C. § 2252(a)(5)(B) (count one); Travel with Intent to Engage in a Sexual Act with a Minor on various dates in 2003 and 2004, all in violation of 18 U.S.C. § 2423(b) (counts two-ten); Coercion and Enticement to Travel in 2004, in

---

[2] The second indictment also charged one forfeiture count. (Cr. B-Doc. 1.) Forfeiture was ordered. (Cr. B-Doc. 17.)

violation of 18 U.S.C. § 2324(a) (count eleven); and, Production of Child Pornography in 2004, in violation of 18 U.S.C. § 2251(a) (count twelve). (Cr. A-Doc. 1.)

On October 28, 2008, a second indictment was entered. (Cr. B-Doc. 1.) Counts one and four charged Simons with Transfer of Obscene Matter to a person under 16 years of age in 2002, in violation of 18 U.S.C. § 1470. (*Id*.)  Counts two and three, charged Travel with Intent to Engage in a Sexual Act with a Minor in 2002, in violation of 18 U.S.C. § 2423(b).

The evidence underlying six counts in the second indictment (counts five-ten) was not seized during the execution of the search warrant. Count five charged Production of Child Pornography in 2005, in violation of 18 U.S.C. § 2251(a).  (*Id*.) Count six charged Simons with Transporting Child Pornography in interstate commerce by computer in November 2005, in violation of 18 U.S.C. § 2252A(a)(1). Moreover, for counts seven through ten, the offense conduct occurred in 2008, approximately two years after the search warrant was executed. Counts seven through nine charged Simons with Travel with Intent to Engage in a Sexual Act with a Minor, in violation of 18 U.S.C. § 2423(b). (*Id*.)  Count ten charged Simons with Transporting a Minor for Sexual Purposes, in violation of 18 U.S.C. § 2423(a). (*Id*.)

After an extensive Rule 11 colloquy, the district court found Simons's guilty pleas knowingly and voluntarily entered. (Cv. B-Doc. 8-3 at 64.) As to the offenses of

3

conviction in the first indictment, Simons was sentenced to ten years on count one, and 30 years on counts two through twelve. On the second indictment, Simons was sentenced to ten years on counts one and four; 30 years on counts two, three, five, and seven through nine; 20 years on count six; and life on count ten. All terms were to run concurrently with each other.

### B.    Simons's Offense Conduct.

At the plea hearing, Simons agreed that the following facts were generally accurate. In late 2005, a lead was sent to the FBI in Huntsville from the FBI in Texas alleging that Simons was communicating with a 17-year old girl from Texas, sending her images of child pornography, and asking her to send him nude images of herself. (Cv. B-Doc. 8-3 at 47.)

In May 2006, a federal search warrant was executed by the FBI at John Simons's residence in Huntsville, Alabama. (The search warrant is discussed in more detail in Section C below.) The search warrant authorized the agents to search for and seize evidence related to the possession and receipt of child pornography. (Cv. B-Doc 8-3 at 47.) The agents found many items of evidentiary value, including three videotapes depicting images of child pornography (first indictment-count one), and a series of spiral notebooks that were yearly diaries of Simons's criminal activities. (*Id.*)

The first videotape, dated July 15, 2003, shows Simons and an underage girl. (*Id.*) The girl tells Simons on the videotape that she does not want to be recorded.

4

(*Id.*) She later displays her genital area and then performs oral-genital intercourse on Simons. (*Id.*) The second videotape, dated August 12, 2003, is of Simons and the same girl. The girl again displays her genital area at Simons's request and Simons says that she is a tall little 15-year old. (*Id.*) The girl then performs oral-genital intercourse on Simons followed by other sex acts. (*Id.*) The third videotape is dated November 2004 and shows a different girl. (*Id.* at 48.) Simons instructs that girl to spread her legs while she is lying on the bed. (*Id.*) Simons and the girl then engage in intercourse. (*Id.*)

In an effort to identify the two girls, agents reviewed Simons's diaries, where Simons documented his extensive criminal conduct year by year. In his 2003 diary, Simons describes his sexual relationship with a 15-year old girl from Ohio, named A.M. (*Id.*) A.M. was the girl on the first two videotapes. (*Id.*) Simons wrote about his trips to Ohio to engage in sexual acts with A.M. and explicitly details his numerous sexual interactions with her (first indictment-counts two through nine). (*Id.* at 49-52.) In his diaries, Simons documented the specific crimes he committed each year. For example, he would write, "interstate travel to have sex with a child," "child pornography." (*Id.*at 56.) He would also denote whether it was a federal offense and describe any state offenses he committed, such as "rape one," "sexual abuse two." (*Id.*at 57.)

In Simons's 2004 diary, Simons documented his trips to engage in sexually explicit conduct with a 15-year old girl from Indiana named A.S (first indictment-count ten). (*Id.* at 52.) A.S. was the girl on the third videotape. (*Id.*) At some point, A.S. moved to Florida and Simons catalogued A.S.'s trip to Alabama from Florida to visit him and, again, Simons engaged in sexual activity with A.S. (first indictment-count eleven). Simons had sex with A.S. in an Alabama motel room. (*Id.* at 53.) It was on this trip that the third videotape was produced (first indictment-count twelve). (*Id.*)

After the first indictment was filed, Simons was arrested. (*Id.* at 54.) The investigation, however, continued. (*Id.*) About four months later, Simons was charged with ten additional counts in the second indictment. (Cr. B-Doc. 1.)

In his 2002 diary, Simons described sending naked pics to R.R. (*Id.* at 57.) The FBI identified and talked to R.R. who was 14 at the time she talked to Simons and saw Simons naked via his webcam. (second indictment-count one). Further examination of the 2002 diary revealed Simons traveling to Florida multiple times to have sex with a minor named M.L. (second indictment-counts two and three). (*Id.* at 54-57.) Simons describes in great detail his sexual interactions with M.L. (*Id.* at 54-57.) Also in the 2002 diary, Simons describes transferring naked pictures of himself via webcam to M.D., another minor. (count four). (*Id.* at 59.) M.D. told the FBI that she was only 12 years old at the time. (*Id.*)

6

Six counts in Simons's second indictment were unrelated to anything seized during the execution of the search warrant. In late 2005, the FBI in Dallas learned that Simons was communicating with a 17-year-old girl from Texas, R.B. (*Id.* at 54.) During one of these communications in April 2005, R.B. sent Simons, at his request, nude images of herself (second indictment-count five). And, in late November 2005, Simons sent images of child pornography to her (second indictment-count six). (*Id.* at 55.) In an accompanying email, he described the child pornography in great detail. (*Id.* at 55-56.) R.B. admitted to receiving those images. (*Id.*)

Finally, shortly after Simons's arrest on the first indictment, and nearly two years after the search warrant was executed, the FBI in Huntsville was contacted by a law-enforcement officer from Tennessee who was investigating Simons for sexual assault of a minor. (*Id.* at 60.) The investigation revealed that in March 2008, Simons struck up a conversation with a 14-year-old girl, A.W., in a Wal-Mart in Tennessee, exchanged phone numbers with her, and then began to communicate with her by telephone. (*Id.*) Simons then drove from Huntsville to Tennessee in March, April, and May, having sex with A.W. numerous times (counts seven to nine). (*Id.* at 61-62.) Simons also took A.W. from Tennessee to Huntsville, Alabama, stayed in two different hotels, had oral and vaginal sex with her, and then took her home (count ten). (*Id.*) This was the conduct charged in count ten. Simons received a life sentence on that count.

7

**C.    The Search Warrant Affidavit Established Probable Cause.**





### D.    After an Extensive Rule 11 Colloquy, the District Court Accepted Simons's Pleas as Knowing and Voluntary.

Simons pleaded guilty without a plea agreement to all substantive counts in both indictments—a total of 22 counts. (Cv. B-Doc. 8-3 at 4, 10.) Before accepting Simons's plea, the district court conducted an exhaustive Rule 11 colloquy. (*Id.* at 1-66.) As an initial matter, the court inquired whether Simons was satisfied with his attorney, Paul Sandlin. (*Id.* at 9.) Simons stated that he was satisfied. (*Id.*) Additionally, Simons stated that he read the indictments, discussed the charges with his attorney, and had a complete understanding of the charges. (*Id.*) And, Simons confirmed his understanding of the maximum sentences he was subject to for each and every count. (*Id.* at 12-34.) For example, the court explained that, for count ten of the second indictment (transporting a minor for sexual purposes in violation of 18 U.S.C. § 2423(a)), Simons was subject to a sentence of at least 10 years and as long as life imprisonment. (*Id.* at 26.) Simons stated he understood. (*Id.*) The district court also explained that Simons's sentences could run consecutively to one another. (*Id.* at 18-20.) Again, Simons stated that he understood. (*Id.*)

Simons also affirmed that he executed guilty-plea advice-of-rights-certificate form for each case showing that his attorney explained the matters set out in the form to Simons's satisfaction. (*Id.* at 42.) Finally, the court again inquired whether Simons

10

was satisfied with his attorney's efforts and his preparation of Simons's cases. (*Id.* at 45.) Simons stated he was satisfied. (*Id*.)

The government outlined the evidence it expected to offer if the cases went to trial. (*Id*. at 46-63.) Given the nature of the offenses and the number of counts in the indictments, the explanation was lengthy. (*See* Cv. B-Doc. 8-3 at 46-63.) Simons did not have any questions about the facts related by the government, nor did he dispute that he committed the charged conduct. (*Id*. at 63.) The court accepted Simons's guilty pleas, finding they were knowing and voluntary, and supported by an independent basis in fact. (*Id*. at 64.)

### E.    The District Court Sentences Simons.

At the sentencing hearing, the district court adopted the factual statements in the revised Presentence Investigation Report, finding the total offense level to be 43, the criminal history category to be I, and the resulting advisory guidelines imprisonment range to be life. (Cr. B-Doc. 8-4 at 4.) However, that sentence could only be imposed on Count Ten of the second indictment because the statutorily authorized maximum sentences for all other offenses of conviction in both cases were less than the advisory guidelines range sentence. (*Id*.)

Simons's attorney at sentencing, Marcus Helstowski, advocated for leniency.[3]

Helstowski noted that Simons was very remorseful and had taken responsibility for all of his actions. (Cv. B-Doc. 8-4 at 6.) And, he noted that Simons had been "fully cooperative during the entire investigation." (*Id*.) He further explained Simons's personal background and educational background and talked about his military service. (*Id*. at 6-7.)

The government requested a life sentence based on the egregious crimes Simons committed. The AUSA stated, in part:

> I have never seen anybody or known about anybody, in all the times that I have been a prosecutor - - and it's been over 20 years now, and most of those years have been spent helping investigate and prosecute child exploitation cases - - I just don't know that I have ever known about anybody that lived their whole life planning how they were going to find their next victim and exploit them.

(*Id*. at 9.)

Simons told the court that everything the prosecutor said was true. (Cr. B-Doc. 8-4 at 14.) He also stated that: he had "no excuse for anything that was done"; "there's no time [I] will make any excuses for the things I did"; and "I understand that I am going to be sent to prison." (*Id*. at 18, 19.) He also stated that he understood

---

[3] Paul Sandlin represented Simons at the plea hearing. (Cv. B-Doc. 8-5 at 1-2.) Sandlin was retained to represent Simons in May 2006, after the execution of the search warrant, and that representation continued until June 2009, when Sandlin left private practice to become the Chief Deputy District Attorney for Madison County, Alabama. (*Id*.) Helstowski was then retained to represent Simons.

12

"that the guidelines do, for one of the charges, do state that I could get a life sentence, which, I understand is automatic life without parole, because there is not parole in the federal system. And so I – I understand what I am looking at." (*Id*. at 19.)

The court then imposed the following sentence:

> As to the offenses of conviction in Case Number CR08-247 [first indictment], you are sentenced to ten years for Count one, and 30 years for Counts Two through Twelve, inclusive. As to the offenses of conviction in Case Number CR08-408 [second indictment] you are sentenced to ten years for Counts One and Four; 30 years for Counts Two, Three, Five, and Seven through Nine, inclusive; 20 years for Count Six; and life for Count Ten. All terms are imposed separately, but will run concurrently with each other.

(Cv. B-Doc. 8-4 at 21.) There were no objections to the sentence. (*Id*.) Simons did not file a direct appeal.

### F.    Simons Files Two § 2255 Motions.

In June 2011, Simons filed two Motions to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. (Cv. A-Doc. 1; Cv. B-Doc. 1.) In each motion Simons argued that "[c]ounsel was ineffective for failing to challenge the affidavit supporting the search warrant."[4] (Cv. A-Doc. 1 at 5; Cv. B-Doc. 1 at 5.)

---

[4] In his motion and amended motion in Case No. 11-cv-8028, relating to the second indictment, Simons raised two additional grounds that counsel was ineffective: (1) for failing to properly advocate the § 3553(a) factors at his sentencing and (2) for failing to file an appeal after being instructed to do so. (Cv. B-Doc. 1 at 6; Cv. B-Doc. 14.)  These claims were denied. (Cv. B-Doc. 29 at 1-7.) No certificate of appealability was granted as to these issues.

13

With regard to Simons's ineffective assistance claim relating to the search warrant affidavit, the government argued that Simons cannot establish deficient performance or prejudice and therefore his petition should be denied. (Cv. B-Doc. 6 at 16-24.) The government attached an affidavit of Paul Sandlin—the attorney who was retained to represent Simons following execution of the search warrant—to its response. (Cv. B-Doc. 8-5.)

Sandlin noted that Simons stated "early on and continuously his desire to resolve these matters as soon as possible, to accept responsibility for his conduct, and, to avoid, as much as possible, public exposure." (Cv. B-Doc. 8-5 at 2.) Additionally, Sandlin stated that one of Simons's primary and recurring concerns was to "minimize his mother's exposure to the judicial system and to shield from her, as much as possible, the details of his alleged conduct." (*Id*.) Simons continually expressed to Sandlin his desire to accept responsibility for his conduct and accept appropriate punishment. (*Id*. at 3.) Sandlin spoke to Simons more than once about search and seizure issues. (*Id*.) Sandlin's opinion was that the search warrant was based on probable cause and properly executed. (*Id*.) Additionally, the seizure would have no bearing on the counts where Simons's criminal conduct occurred after the search and seizure. (*Id*.) After considering Sandlin's opinion, Simons made the decision not to contest the search of the house. (*Id*.)

14

**G.** **The District Court Denies Simons's Ineffective-Assistance Claim Related to the Search Warrant Because Simons Did Not Show that Counsel's Performance was Objectively Unreasonable or that Simons Suffered Any Prejudice.**

The magistrate judge recommended denial of Simons's motions. In his report and recommendation, the magistrate judge found that there was "probable cause to believe that evidence that Simons committed the offense of possession and/or production of child pornography would be found at the home searched, and was legally sufficient to support the issuance of the search warrant." (Cv. A-Doc. 17 at 13; Cv. B-Doc. 26 at 13.) The magistrate judge rejected Simons's challenges to the sufficiency of the affidavit. In terms of the staleness claim, the magistrate judge stated, in part:

> Because of both the nature of the crime of possession and production of child pornography, and the technology by which such images are stored, it was reasonable to suspect that, even after a lapse of time, evidence of the crime could be located at the movant's mother's home, where his computer was located. As is demonstrated by this very case, offenders inclined to possess and view child pornography are likely to retain possession of their pornography for long periods of time. It is not surprising that child pornography obtained at a particular time will remain on the defendant's computer (or in his possession) more than six months later.

(*Id.* at 14.) Finally, the magistrate judge concluded that Simons failed to show deficient performance or prejudice.

> Considering all of the circumstances of this case, Sandlin's failure to challenge the search warrant was not unreasonable. Counsel has stated,

15

and the movant has not disputed, that he discussed the issues regarding the search and seizure with the movant, and that the movant made a decision not to challenge the warrant.  First, the court agrees that the warrant was properly issued, and that counsel, therefore, had no grounds for challenging the warrant.  Second, exclusion of the evidence from the warrant would not provide a defense to the most serious crimes, which were committed *after* the warrant was executed. Third, it appears that Simons, at the time, instructed counsel to act in accordance with his desire to bring the prosecution to a quick and quiet end, and to allow him to take responsibility for his crimes, be punished accordingly, and save his mother from extended judicial proceedings.   The movant has failed to demonstrate either that his attorney acted unreasonably, or that he suffered any prejudice from the attorney's failure to challenge the search warrant.  Accordingly, the movant's claim that his attorney provided ineffective assistance in failing to challenge the search warrant is without merit.

(Cv. A-Doc. 17 at 15-16; Cv. B-Doc. 26 at 15-16.) Simons objected to the magistrate judge's report and recommendations. (Cv. A-Doc. 18; Cv. B-Doc. 28.)

The district court accepted and adopted the magistrate judge's report and recommendation and denied Simons's § 2255 motions. (Cv. A-Doc. 20 at 7; Cv. A-Doc. 21; Cv. B-Doc. 29 at 7; Cv. B-Doc. 30.) The district court stated:

Movant's second claim is that Sandlin committed ineffective assistance of counsel by failing to file a motion to suppress the fruits of a search of movant's home conducted pursuant to a warrant.  Movant seems to argue that not only was the information used to obtain the warrant stale, but also that it simply was not enough to establish probable cause to search.  First, the magistrate judge examined the warrant application and affidavit, and concluded that it did establish probable cause for the warrant.  But even if a challenge to the warrant could have been made, Sandlin's affidavit makes clear that movant did not want to drag out the

16

proceedings and expose his mother to the details of his crimes. In consultation with Sandlin, the decision was made to plead, rather than fight the search. Such a knowing and voluntary decision to plead (which movant has not challenged) amounted to both a waiver of any defect in counsel's failure to challenge the warrant, and a professionally reasonable basis on which counsel could forgo the challenge to the warrant. Furthermore, even if a motion to suppress had been filed and granted by the court, it would not have involved any of the evidence underlying the most serious charge against movant and on which he received the sentence of life. As the magistrate judge noted, "The charge that resulted in the life sentence, Count Ten of the second indictment, was based on conduct that occurred in June 2008, more than two years after the search warrant was executed, and more than five years after the conduct that gave rise to the first indictment." (Report and Recommendation, Doc. 17, p. 16 n.8). Thus, Sandlin's failure to file a motion to suppress evidence from the search changed nothing; movant still would have received the same life sentence anyway.

(Cv. A-Doc. 20 at 4-6; Cv. B-Doc. 29 at 4-6.) The district court denied Simons's

application for a certificate of appealability. (Cv. A-Doc. 30; Cv. B-Doc. 39.)

## STANDARDS OF REVIEW

"[T]he scope of [this Court's] review of an unsuccessful [Section] 2255 motion

is limited to the issues enumerated in the COA." *McKay v. United States*, 657 F.3d

1190, 1195 (11th Cir. 2011) (citing *Rhode v. United States*, 583 F.3d 1289, 1290-91

(11th Cir. 2009)(per curiam) and *Murray v. United States*, 145 F.3d 1249, 1250-51

(11th Cir. 1998)(per curiam)). The district court's denial of a Section 2255 motion is

reviewed for clear error with respect to findings of fact, and *de novo* with respect to

questions of law. *McKay*, 657 F.3d at 1195. Ineffective assistance of counsel claims are mixed questions of law and fact that this Court reviews *de novo*. *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014).

## SUMMARY OF ARGUMENT

Simons argues that the district court erred by denying his Sixth Amendment claim because, he says, counsel was ineffective for failing to challenge the sufficiency of the affidavit supporting the search warrant. Because Simons can show neither deficient performance nor prejudice, his claim fails.

Simons cannot show deficient performance because counsel's performance was not unreasonable. The search warrant affidavit was sufficient; it was not stale and established a fair probability of finding contraband at Simons's residence. Nor can Simons make a showing of prejudice. Again, the warrant affidavit was sufficient. Thus, any challenge raised by counsel would have been denied. Moreover, exclusion of the evidence obtained as a result of the warrant would not have provided a defense to the most serious crimes, which were committed after the warrant was executed. In fact, the charge that resulted in a life sentence was based on conduct that occurred almost two years after the warrant was executed. Thus, counsel's failure to file a motion to suppress had no impact on Simons's life sentence. Relying on *United States v. Cronic*, Simons asks this Court to presume prejudice. But, the presumption is not

18

applicable here because Simons cannot show that a complete denial of counsel or a constructive denial of counsel occurred. The district court should be affirmed.

## ARGUMENT

## I. COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO CHALLENGE THE SUFFICIENCY OF THE SEARCH WARRANT AFFIDAVIT.

Simons argues counsel was ineffective for failing to challenge the sufficiency of the affidavit supporting the search warrant. (Simons's Br. at 7-22.) To establish ineffective assistance, Simons must show both that his attorney's performance was so deficient as to fall below an objective standard of reasonableness and that he was prejudiced as a result, *i.e.*, but for the deficient performance, there was a reasonable probability of a different result. *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 2062, 2068 (1984). The burden rests on Simons to demonstrate a constitutional violation. *Id.* at 687, 104 S. Ct. 2052. Simons cannot make such a showing.

### A. Simons cannot show deficient performance.

When evaluating performance, courts "strongly presume[]" that counsel has "rendered adequate assistance and [has] made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S. Ct. at 2066. Taking into account that presumption, Simons must show that "no competent counsel would have taken the action that his counsel did take." *Chandler v. United States*, 218 F.3d 1305,

19

1315 (11th Cir. 2000) (*en banc*).  He cannot do so.  And, because a "[p]etitioner's claim must fail if either of the *Strickland* prongs are not met," this Court need not consider whether Simons suffered prejudice.  *See Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1319 (11th Cir. 2005).

Simons says that counsel's performance was deficient because counsel "choos[e] the path of entering a blind plea without first seeking to exclude much of the evidence against his client." (Simons's Br. at 9.) Specifically, he argues that counsel's performance fell below an objective standard of reasonableness because counsel did not file a motion to suppress the fruits of the search of Simons's residence. (Simons's Br. at 10-11.) According to Simons, the affidavit was stale and contained no connection between the email address used by Simons to send child pornography to a 17-year old in Texas and his residence. (Simons's Br. 14-16.) Simons is wrong.

Contrary to Simons's claim, counsel's failure to challenge the warrant was not objectively unreasonable. Consistent with the findings of the magistrate judge and the district court (Cv. B-Doc. 26 at 13; Cv. B-Doc. 29 at 5), the warrant was properly issued and established probable cause. In terms of staleness, "[t]here is no rule or time limit for when information becomes stale." *United States v. Bervaldi*, 226 F.3d 1256, 1265 (11th Cir. 2000). Whether information is stale is determined on the particular facts of each case. (*Id.*) And, in the context of child pornography cases, "courts have

largely concluded that a delay—even a substantial delay—between distribution and the issuance of a search warrant does not render the underlying information stale." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010). This consensus rests on the widespread view among the courts—in accord with ████████████ ████████████████████████████████████████████████ ████████████████████████████████ (Cv. B- Doc. 42 at 19-20.) For this reason, because of the nature of the crime of possession and production of child pornography, and the technology by which such images are stored, it was reasonable to suspect that, after a lapse of time, evidence of the crime would be located at Simons's residence.

Here, the information provided by Special Agent Campbell established that no more than six months had passed from the time Simons emailed an image depicting child pornography using his email account until the warrant issued. This Court has affirmed in other cases where the time frame between the search and information linking defendant to possession of child pornography is much greater. (*See United States v. McBurnette*, 382 F. App'x 813, 815 (11th Cir. 2010) (where this Court rejected defendant's staleness where a victim detailed the defendant's possession of child pornography **two years** after she viewed it with him). Thus, any challenge based on staleness would not have succeeded and counsel's failure to challenge the warrant cannot be objectively unreasonable.

21

Simons also argues the affidavit was infirm because it did not connect the email address used by Simons to send child pornography and his residence. (Simons's Br. at 16.) But, contrary to Simons's argument, the affidavit connects the email address to his home. The affidavit states that: ███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████ (Cv. B-Doc. 42 at 20, 23.) The totality of the circumstances, therefore, established a fair probability of finding contraband or evidence at Simons's residence.[5] On this basis alone, a reasonable attorney could have chosen not to attack the sufficiency of the affidavit.

Simons argues that counsel's performance was deficient because Simons faced a life sentence and counsel should have used his procedural rights to leverage a negotiated plea for less than a life sentence. (Simons's Br. at 9.)  In other words,

---

[5] Moreover, even if the warrant was determined to be invalid, the *Leon* exception to the exclusionary rule would necessarily apply here. *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984). In *Leon*, the Supreme Court held that, with limited exception, the exclusionary rule should not apply when police officers reasonably rely in good faith on a warrant that subsequently is determined to be invalid. *Id*. at 923, 104 S. Ct. 3405, 3421. The affidavit here had ample indicia of probable cause "to render official belief in its existence" reasonable. (*Id.*) Thus, even assuming it would have been found to be lacking, the evidence against Simons would still have been admissible.

according to Simons, counsel should have filed a motion to suppress challenging the search warrant as a means to extract a sentence less than life. (*Id*.) But, Simons concedes that "no successful motion to suppress would have resulted in a dispositive resolution as to the most serious offense and the life sentence . . ." (Simons's Br. at 9.) Suppression of the items seized from Simons's residence would have no effect on counts five through ten in the second indictment. And, four of those counts involve criminal conduct that occurred almost two years after the warrant was executed (counts seven through ten).  For one of those counts, count ten, moreover, Simons faced a life sentence. For counts five, seven through nine, the maximum sentence was 30 years and 20 years for count six. Thus, assuming, but not conceding, that the affidavit was ripe for a challenge, a successful motion would not have resulted in a different disposition as to the life sentence (or the five other counts that were unrelated to the warrant), and the basis for Simons's claim regarding deficient performance fails.

Finally, when considering whether counsel performed deficiently by failing to challenge the warrant, the question is not whether the best lawyer would have done so.  The "test [for determining the existence of deficient performance] has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done." *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).  Rather, this Court must ask "only whether some reasonable lawyer at the

trial could have acted, in the circumstances, as counsel acted." *Id.*; *see also Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc) (stating that "to show that the conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take"). Here, "because hypothetical competent counsel reasonably could have taken [the] action . . . identical to [the action of] actual . . . counsel," Simons cannot establish deficient performance. *Chandler*, 218 F.3d at 1315 n.16 (summarizing *Harich v. Dugger*, 844 F.2d 1464, 1470–71 (11th Cir. 1988) (*en banc*)); *see also id.* at 1315 (citing favorably *United States v. Fortson*, 194 F.3d 730, 736 (6th Cir. 1999), which concluded "without district court findings or even [an] evidentiary hearing" that defendant was not entitled to relief because the court could conceive of numerous reasonable motives for counsel's actions). And, because Simons cannot establish deficient performance, his petition should be denied without regard to prejudice. *See Maharaj*, 432 F.3d at 1319.

### B.    Simons cannot establish prejudice.

As a threshold matter, Simons cannot establish prejudice because the warrant was valid. Even assuming, without conceding, that there was deficient performance, Simons cannot show prejudice under any circumstances. Where a claim of ineffective assistance involves a plea agreement, to show prejudice, the defendant must show "a reasonable possibility that, but for counsel's errors, he would not have pleaded guilty

and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366 (1985). Simons can make no such showing here.

Simons argues that he was prejudiced because there were legitimate challenges to the search warrant. First, however, as discussed above, the search warrant affidavit was sufficient; it was not stale and established a fair probability of finding evidence at Simons's residence. Second, as the magistrate judge and district court noted, and as discussed above, exclusion of the evidence obtained as a result of the warrant would not provide a defense to the most serious crimes, which were committed after the warrant was executed. In fact, "[t]he charge that resulted in the life sentence, Count Ten of the second indictment, was based on conduct that occurred in June 2008, more than two years after the search warrant was executed, and more than five years after conduct that gave rise to the first indictment." (Cv. B-Doc. 17 at 16 n.8; Cv. B-Doc. 29 at 5-6.) And, Simons also received sentences of 30 years on counts five, seven, eight, and nine, and 20 years on count six. None of these counts would be affected by exclusion of evidence obtained as a result of the warrant. Thus, counsel's failure to file a motion to suppress would have no impact on Simons's sentence and there is no reasonable probability of a different result.

Simons argues that "had he faced the decision between a trial or a plea without the fruits of the May 2, 2006 search warrant, given that Simons faced the imposition of life without the possibility of parole sentence, he obviously would have insisted on

trial and would not entered a guilty plea." (Simons's Br. at 13.) Simons provides no evidence to support this claim and it is belied by the record. It is undisputed that Simons told his counsel that one of his primary recurring concerns was to "minimize his mother's exposure to the judicial system and to shield from her, as much as possible, the details of his alleged conduct." (Cv. B-Doc. 8-5 at 2.) And, he continually expressed to his attorney his desire to accept responsibility for his conduct and accept appropriate punishment. (*Id.* at 3.) Those statements are consistent with his conduct and statements at his plea and sentencing hearings. At his plea hearing, even after Simons was informed he could face a life sentence, and, further, that his sentences could run consecutively to one another, he still wanted to plead guilty. (Cv. B-Doc. 8-3 at 12-34, 63-64.) At sentencing, he stated that he understood what he was "looking at"; he understood he could get a life sentence, and, he understood that he was "accountable for all this." (*Id.* at 15, 19.) Simons knew he was facing a life sentence and still choose to plead guilty. And, Simons never sought to withdraw his guilty plea. There is no evidence in the record to support Simons's assertion that he would not have entered a guilty plea had counsel challenged the sufficiency of the affidavit.[6]

---

[6] In his brief, without reference to the record, Simons states "[o]n information and belief, the Petitioner testified at an evidentiary hearing that he would not have gone forward with a guilty plea had he been aware that there was no hope for a sentence of less than life." (Simons's Br. at 22.) As a threshold matter, under *Booker*, the guidelines are advisory and because Simons did not face a mandatory

Relying on *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039 (1984), Simons argues that this Court should presume prejudice. But, the presumption is not applicable here. In *Cronic*, the Supreme Court stated that there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Id.* at 658, 104 S. Ct. at 2047. The Court found that such circumstances exist "if the accused is denied counsel at a critical stage of his trial." *Id.* at 659, 104 S. Ct. 2047. "A constructive denial of counsel occurs, however, in only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all." *Craker v. McCotter*, 805 F.2d 538, 542 (5th Cir. 1986) (quotations and citations omitted). This is not one of those cases.

Here, there was no complete denial of counsel or constructive denial of counsel and the presumption of prejudice does not apply. In fact, the evidence shows that Simons had meaningful assistance of counsel. In his guilty plea advice of rights

---

life sentence, the district court had discretion to impose a sentence of less than life. More importantly, Simons's assertion is contrary to his statements at the plea hearing and to his attorney. At the plea hearing, Simons stated that he understood that he faced a life sentence and even a possibility that his sentences could run consecutively, resulting in a sentence of approximately 170 years. (Cv. B-Doc. 8-3 at 19.) Again, even with this knowledge, Simons told the court he wanted to plead guilty. (*Id.* at 19, 63.) "[T]here is a strong presumption that the statements made during the [Rule 11] colloquy are true. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994). Simons statements and conduct are consistent with what he told his attorney, *i.e.*, that he wanted to resolve his cases as quickly as possible, to accept responsibility, and to avoid public exposure. (Cv. B-Doc. 8-5 at 2.)

certification, Simons affirmed that his attorney explained, to his satisfaction, the charges against him, possible penalties, and Simons's substantive rights. (Cr. A-Doc. 10.) At his plea hearing, Simons told the court that he discussed the charges with his attorney, he was satisfied with his representation, and had a complete understanding of the charges. (Cv. B-Doc. 8-3 at 9.) Additionally, counsel spoke to Simons more than once about search and seizure issues. (Cv. B-Doc. 8-5 at 3.) And, it was after consultation with counsel an informed decision was made not to challenge the search warrant. (*Id.*) The presumption of prejudice has no application in this case.

For the reasons stated above, Simons cannot show prejudice and his claim should be rejected.

## CONCLUSION

The judgment below should be affirmed.

Respectfully submitted,

JOYCE WHITE VANCE
United States Attorney


*/s/*RAMONA C. ALBIN
Assistant United States Attorney

28

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2016, the foregoing brief was filed electronically with the Clerk of the Court using the CM/ECF system and a copy was served on counsel for the Appellant by placing a copy of the same in the United States mail, first class and postage prepaid, addressed as follows:

> Derek Drennan
> Kirk Drennan Law
> 500 Office Park Drive
> Suite 100
> Birmingham, AL  35223.

On this same date, the original and additional copies of the Brief of Appellee were filed by Federal Express overnight delivery, addressed as follows:

> Clerk's Office - Appeal No. 15-11928-DD
> U.S. Court of Appeals - Eleventh Circuit
> 56 Forsyth Street NW
> Atlanta, GA 30303.

> */s/*RAMONA C. ALBIN
> Assistant United States Attorney
> United States Attorney's Office
> 1801 Fourth Avenue North
> Birmingham, Alabama 35203-2101
> (205) 244-2001